IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CLIFFORD HAYES, individually and
as Trustee of the CLIFFORD D. HAYES
REVOCABLE LIVING TRUST                                              PLAINTIFF

v.                              Case No. 5:09-CV-05122

FEDERAL DEPOSIT INSURANCE
CORPORATION, Receiver of ANB
Financial NA                                                        DEFENDANT

## OPINION AND ORDER

Before the Court are a motion for summary judgment (Doc. 34) filed by Defendant Federal Deposit Insurance Corporation as receiver of ANB Financial NA ("the FDIC"), Plaintiff Clifford Hayes's response (Doc. 38), the FDIC's reply (Doc. 40), and the parties' supporting documents.[1] For the following reasons, the Court finds that the FDIC's motion for summary judgment should be DENIED.

**I.    Background**

ANB Financial, NA, formerly Arkansas National Bank, ("ANB") was established on June 1, 1994. On June 6, 1994, Clifford Hayes opened an account with ANB.[2] Hayes formed CHE, LLC ("CHE") on February 19, 1997, by filing CHE's Articles of Organization (Doc. 37-7) with the Nevada Secretary of State. CHE's Articles of Organization provide that "[n]o member of the

---

[1] Hayes's response to the FDIC's motion is also labeled as a cross-motion for summary judgment. However, the Court declines to accept Hayes's response as a separate motion for summary judgment, as it was filed well after the deadline for motions set out in the Court's Final Scheduling Order (Doc. 31), is not in compliance with Local Rules 7.2 or 56.1, and Hayes did not seek any extension of time to file his own motion for summary judgment. Nonetheless, even if the Court were to accept Hayes response as a cross-motion for summary judgment, it would be denied because, as explained below, factual questions remain to be resolved.

[2] On May 17, 2007, the Clifford D. Hayes Revocable Living Trust was added as a joint holder of the account.

Company shall have the authority to bind the Company unless such member is also a manager of the Company or except as provided in the Company's Operating Agreement." (Doc. 37-7, Article V). CHE's Operating Agreement has been referenced by Hayes, but has not yet been included with any filing in this case. However, in a case previously before this Court involving similar circumstances, Judge Robert Dawson noted that it was undisputed that "the Operating Agreement of CHE provides that only Clifford [Hayes] is authorized to incur debt on behalf of CHE, and the Articles of Organization of CHE designate Clifford as its sole manager." *Assets Resolution Corp. v. CHE LLC*, 2010 WL 1345284, at *1 (W.D. Ark. Mar. 31, 2010); *see also* (Doc. 37-7, Exhibit 5, Article V).

On December 5, 2003, CHE purportedly received a loan ("2003 loan") from ANB. On August 31, 2004, Hayes executed a Guaranty for all present and future debts of CHE payable to ANB. (Doc. 34-1, pp. 8–9). On August 10, 2006, Randy Hayes executed a Limited Liability Company Authorization Resolution for the use of ANB, in which Randy certified that he was a manager or designated member of CHE; however, the only signature on this purported authorization is that of Randy Hayes. On August 10, 2007, Randy Hayes, ostensibly on behalf of CHE, executed a renewal note for the 2003 loan with ANB listing the principal amount as $139,915.10, with later-accruing interest. Randy Hayes was also the only signatory on the renewal note. On May 9, 2008, ANB was declared insolvent, and the FDIC was eventually appointed as receiver. Based upon the records of ANB that the FDIC obtained after becoming receiver, including Clifford Hayes's Guaranty, and the 2003 loan and renewal note executed by Randy Hayes, the FDIC withdrew funds from Clifford Hayes bank account to setoff CHE's purported debts from the 2003 loan and renewal note.

Clifford Hayes filed this lawsuit seeking reimbursement of the funds he claims were wrongfully withdrawn. In its motion for summary judgment, the FDIC argues that (1) it is entitled to rely solely on ANB's records in collecting on assets acquired from ANB (including the renewal note executed by Randy Hayes and the Guaranty executed by Clifford Hayes); (2) nothing in those records reflects that Randy Hayes was not authorized to incur debt on behalf of CHE or otherwise negates the validity of any of the documents at issue; and (3) according to 12 U.S.C. § 1823(e) Clifford Hayes cannot assert his claim based on outside agreements—i.e., CHE's Operating Agreement—that would tend to diminish or defeat the FDIC's interest in the 2003 loan and renewal note. In response, Hayes argues that (1) he alone was authorized to incur debt on behalf of CHE; (2) he was not aware of the 2003 loan executed on behalf of CHE at any time before or after signing the Guaranty; (3) CHE never received any payment for such; and (4) the loan documents used to obtain a loan in CHE's name were executed by Randy Hayes, who was not authorized to incur debt on behalf of CHE, making the debt invalid as against CHE or Clifford Hayes and making Hayes's Guaranty for CHE's debts inconsequential.

## II.     Legal Standard

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In order to grant summary judgment, the evidence must be such that no reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Therefore, the moving party must demonstrate the absence of genuine issues of material fact to be resolved. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the Court must resolve all controversies in favor of the non-moving party, take the non-moving party's evidence as true,

and draw all justifiable inferences in favor of that party. *Matsushita Elect. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, in opposing a motion for summary judgment, the non-moving party may not rest on allegations or denials in its pleadings but must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

**III.    Analysis**

    **A.    Applicability of 12 U.S.C. § 1823(e) as a Bar to Plaintiff's Claim**

The FDIC's primary contention in its motion for summary judgment is that, under 12 U.S.C. § 1823(e), Hayes may not introduce evidence of CHE's Operating Agreement to show that the 2003 loan and renewal note were not authorized and are therefore invalid against CHE because doing so will diminish the FDIC's interest in the 2003 loan, subsequent renewal note, and Hayes's Guaranty. The FDIC appears to maintain that § 1823(e) is a bar to Hayes's claim no matter whether the 2003 loan or renewal note were actually obtained by an individual without authority to incur debt on behalf of CHE because the FDIC is permitted to rely solely on ANB's records. Section 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as a receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement–
>
> (A) is in writing,
>
> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

In enacting what is now 12 U.S.C. § 1823(e), Congress drew from the common-law D'Oench, Duhme doctrine.  The D'Oench, Duhme doctrine provides that a defendant will be estopped from asserting a defense based upon a secret agreement or understanding intended to deceive bank examiners and the FDIC as to the solvency of the failed bank.  *Kessler v. National Enterprises, Inc.*, 165 F.3d 596, 598 (8th Cir. 1999) (explaining the doctrine derived from *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942)).  "In the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Congress broadened § 1823(e) to protect assets acquired by the FDIC as receiver for a failed bank."  *Kessler*, 165 F.3d at 598 (citations omitted); *N. Ark. Med. Ctr. v. Barret*, 962 F.2d 780, 783 n.3 (8th Cir. 1992) (noting that FIRREA's addition of 12 U.S.C. § 1821(d)(9) expressly made § 1823(e) applicable to claims asserted against the FDIC).  The Eighth Circuit has since held that FIRREA preempted the common-law D'Oench, Duhme doctrine.  *Kessler*, 165 F.3d at 598 (citations omitted).  Ultimately, both "D'Oench and § 1823(e) were intended to protect bank examiners and the FDIC . . . as receiver[] from covert agreements not appearing in the bank's records, and to encourage prudent lending and proper recordation of banking transactions."  *Id.* at 599 (citing *Community Bank of the Ozarks v. FDIC*, 984 F.2d 254, 256 (8th Cir. 1993)).

"When determining whether [§ 1823(e)] bars a claim, a court must first determine whether the wrongdoings underlying the claim are based upon an agreement."  *Hanson v. FDIC*, 13 F.3d 1247, 1251 (8th Cir. 1994) (citing *Langley v. F.D.I.C.*, 484 U.S. 86, 95 (1987)).  The FDIC argues that Hayes's reliance on CHE's Operating Agreement is what triggers the application of § 1823(e); however, the fact that Hayes points to CHE's Operating Agreement in challenging the facial validity of the loan and renewal note does not bring his claim within the ambit of § 1823(e).  Section 1823(e) is directed toward protecting against secret or side agreements relating more

directly with the banking transaction at issue (i.e., the 2003 loan and renewal note). *See Kessler*, 165 F.3d at 599 ("[I]t is not realistic to apply the bar of § 1823(e) to non-banking transactions or other types of agreements which would not customarily be scrutinized, approved, and recorded by the bank's executive committee or board." (citation and internal quotations omitted)). In addition, looking more closely at the particular requirements under § 1823(e) further supports that an LLC's Operating Agreement is not the type of agreement that § 1823(e) sought to guard against in these scenarios. For example, the last requirement of § 1823(e) requires that any agreement seeking to diminish the interest of the FDIC have been an official record of the depository institution *from the time of its execution*. There is no valid reason that CHE's or any other entity's operating agreement would ever be in a bank's official records at the time of its execution, i.e., when the LLC is formed. As such the Court is not convinced that § 1823(e) applies to the circumstances of this case.

In this case, Hayes is merely challenging the facial validity of the loan documents that served as the basis for the setoff the FDIC executed against Hayes's accounts. "Section 1823(e) does not apply when an asset is allegedly invalid on its face, rather than because of some hidden or collateral agreement." *Nicholas v. United States*, 764 F. Supp. 96 (W.D. Mich. 1991) (citing *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1245 (6th Cir. 1989) (quoting *FDIC v. Merchants Nat'l Bank of Mobile*, 725 F.2d 634, 639 (11th Cir. 1984)). Rather than introducing a secret or collateral agreement, Hayes seeks to introduce documentation that seemingly would have been reviewed when considering whether to issue the 2003 loan in the first place, but which Hayes claims, upon even a cursory review, would have revealed that only he was authorized to incur debt

on behalf of CHE.[3]  Moreover, the fact that this Court in *Assets Resolution*[4] noted that it was undisputed that only Clifford Hayes was authorized to incur debt on behalf of CHE is of probative value in the instant case.[5]

The FDIC also argues that requiring it to verify the authenticity of every signature on every asset, or to hunt down corporate documents not in a failed bank's records would contradict the purpose of the D'Oench, Duhme doctrine and § 1823(e).  First, Hayes is not arguing nor would the Court be inclined to find that the FDIC (or any other receiver for a failed bank) should be required to verify the signatures or hunt down corporate documents on every asset.  That does not mean, however, that signatures on those assets can never be challenged.  Second, the purpose of the D'Oench, Duhme doctrine and § 1823(e), as noted above, was to prevent parties from relying on secret agreements not appearing in a failed bank's records, and to encourage prudent lending and proper recordation of banking transactions.  It does not follow from that stated purpose that § 1823(e) should serve as a shield for any future scrutiny of the facial validity of loan documents, especially when the possibility exists that the failed bank's representatives may not have engaged in the prudent lending practices that both the D'Oench, Duhme doctrine and § 1823(e) sought to encourage.  Regardless, the FDIC has provided no authority either to support its argument or that may otherwise warrant a contrary conclusion.

---

[3] It also appears that ANB's own President, Dan Dykema, agreed that LLC operating agreements should have been reviewed prior to the issuance of any loan to an LLC.  (Doc. 37-4).
[4] 2010 WL 1345284.
[5] The fact that ANB's records included a "Limited Liability Company Authorization Resolution" (Doc. 37-9) reflecting that Randy Hayes had authority to act on behalf of CHE is not useful without some additional evidence.  As noted above, that authorization contains only the signature of Randy Hayes, even in the line designated for a signature by one other member attesting to the document's validity.  (Doc. 37-9)

Ultimately, the Court declines to find that § 1823(e) serves to bar Hayes's claim in any respect, and also declines to find that the FDIC's reliance on a failed bank's records is so absolute as to prevent inquiry on the enforceability of loan documents against parties challenging their facial validity. In this case, questions that remain include but are not limited to whether the loan and renewal note were actually authorized by CHE, and whether Clifford Hayes was aware of the outstanding loan at the time he signed the Guaranty on behalf of CHE.

### B.     Requirements for Pleading Fraud Under Federal Rule of Civil Procedure 9(b)

The FDIC argues that because Clifford Hayes is asserting that Randy Hayes forged the loan documents seeking to bind CHE, his complaint is subject to the heightened pleading requirements under Federal Rule of Civil Procedure 9(b). Rule 9(b) provides that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, or other conditions of a person's mind may be alleged generally." The Eighth Circuit has noted the important purposes that Rule 9(b) serves:

> First, it deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements. Second, it protects against damage to professional reputations resulting from allegations of moral turpitude. Third, it ensures that a defendant is given sufficient notice of the allegations against him to permit the preparation of an effective defense.

*Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015).

In this case, Hayes is alleging that FDIC withdrew funds from Hayes's accounts based on debts that were not legally his nor CHE's. While Hayes argues that a forgery and possibly a fraud occurred that resulted in the wrongful withdrawal of his funds, he is not subjecting the FDIC to any allegation that the FDIC itself engaged in any fraudulent practice—only Randy Hayes. Moreover, none of the purposes of Rule 9(b) are served by holding Hayes to the heightened

requirements in this case. For those reasons, the Court declines to find that Hayes must comply with Rule 9(b) in asserting his claim.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that the FDIC's motion for summary judgment (Doc. 34) is DENIED.

IT IS SO ORDERED this 29th day of December, 2015.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE